**UNITED STATES of America,**
Appellee,

v.

**Horace L. DAVIS, Appellant.**

No. 93–3059.

United States Court of Appeals,
District of Columbia Circuit.

Filed July 13, 1999.

---

A.J. Kramer, Federal Public Defender, and Neil H. Jaffe, Assistant Federal Public Defender, were on the supplemental brief of appellant.

Wilma A. Lewis, U.S. Attorney, John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys, were on the supplemental brief of appellee.

Before: RANDOLPH, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

In *United States v. Crowder,* 141 F.3d 1202 (D.C.Cir.1998) (*Crowder II*), the court, sitting *en banc,* affirmed Davis's conviction.[1] Davis now seeks rehearing on three grounds. The *en banc* court referred Davis's petition to the panel. For the following reasons, we deny the petition.

■ Davis first contends that Officer Farmer's testimony at trial and his testimony at the suppression hearing were in conflict and that the district court therefore should have permitted Davis to introduce the suppression hearing transcript into evidence.

---

**1.** Because *Crowder II* recounts the facts of this case, we do not repeat them here.

At the suppression hearing, when asked where he filled out the buy report, Farmer stated that he filled it out at the police station:

> Defense counsel: "That's something [the buy report] you filled out back at the station, right?"
>
> Farmer: "Yes."

Defense counsel never asked Farmer whether he filled out every section of the buy report at the station. Later at trial, Farmer gave more specific answers, testifying that he filled out most of the report at the station but filled out the clothing description at the scene before the police arrested Davis. Also at trial, Farmer explained on redirect that he filled out the clothing description on the scene so that "if the arrest team asked me again what was the clothing description, I have it written down so I can remember it better and I wouldn't make a mistake in the clothing description."

Davis stresses Farmer's failure to state at the suppression hearing where and when he filled out the clothing description portion of the buy report. There are three answers to this line of argument. First, it may not have been entirely clear to the district court that Farmer's response at the suppression hearing—in light of the broad question defense counsel asked him—gave rise to a testimonial inconsistency. See United States v. Hale, 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); United States v. Strother, 49 F.3d 869, 874 (2d Cir.1995). Second, in view of the facts that defense counsel read Farmer's suppression hearing testimony to him during cross-examination, and that Farmer did not deny giving that testimony, the district court may have believed that admitting the transcript would merely have been cumulative. See Rule 403, FED. R.EVID. Third, even assuming that Farmer's suppression hearing response and trial testimony conflicted and that the district court abused its discretion by not permitting Davis to introduce the transcript into evidence, any such error was harmless.

As we have said, during the cross-examination of Farmer the jury heard word-for-word what he had said at the suppression hearing. See Appellant's Appendix 192. See United States v. Roger, 465 F.2d 996, 997 (5th Cir.1972). Given the freedom defense counsel enjoyed to use the suppression hearing transcript, the district court's refusal to admit the transcript into evidence in no way prejudiced Davis or impaired his defense. See United States v. Bogle, 114 F.3d 1271, 1275–76 (D.C.Cir. 1997); Williams v. United States, 403 F.2d 176, 179 (D.C.Cir.1968).

█ As to the second ground for rehearing, the district court also did not abuse its discretion in admitting Officer Farmer's redacted "buy" report. Even if the buy report was inadmissible as a public record under FED.R.EVID. 803(8)(B), it was admissible under FED.R.EVID. 801(d)(1)(C) as a statement of identification made after perceiving Davis. The facts here are similar to those in United States v. Coleman, 631 F.2d 908, 914 (D.C.Cir.1980), and United States v. Clarke, 24 F.3d 257, 267 (D.C.Cir.1994), which affirmed the admission of similar police notes and tapes that contained witness identifications of the defendants under this rule. (Even though the district court did not admit the buy report under FED.R.EVID. 801(d)(1)(C), this court can affirm on that ground. See United States v. Jacoby, 955 F.2d 1527, 1535 (11th Cir.1992); United States v. Walsh, 928 F.2d 7, 10 n. 10 (1st Cir.1991).)

In challenging the buy report's admissibility, Davis relies on United States v. Oates, 560 F.2d 45, 83–84 (2d Cir.1977), which holds that FED.R.EVID. 803(8)(B) bars the admission of records like the buy report. Oates is of questionable precedential value—other circuits disagree with its sweeping language, see United States v. Hayes, 861 F.2d 1225, 1229–30 (10th Cir. 1988); United States v. Picciandra, 788 F.2d 39, 44 (1st Cir.1986); United States v. Metzger, 778 F.2d 1195, 1201–02 (6th Cir. 1985)—and, in any event, the decision is inapposite. The court's holding in Oates

derived from an express concern about preserving the defendant's right to confront his accusers. *See Oates*, 560 F.2d at 83–84; *Hayes*, 861 F.2d at 1230. That is not an issue here. Farmer testified at trial and was subject to cross-examination. Another case relied on by Davis, *United States v. Smith*, 521 F.2d 957, 965–66 n. 20 (D.C.Cir.1975), is also otiose. Like *Oates*, *Smith* concerned Confrontation Clause issues—which, again, are not at issue here because defense counsel cross-examined Farmer. *See Coleman*, 631 F.2d at 914 ("[t]he concern in *Smith* that the government might submit its entire case by means of unchallenged documentary evidence is not present here").

■ Even if the district court erred in admitting the redacted buy report and permitting the government to refer to it during closing, any such error was harmless and did not prejudice Davis. *See Clarke*, 24 F.3d at 267. The evidence against Davis was strong. Officer Farmer testified that he was "without a doubt" that Davis was the man from whom he bought a rock of crack cocaine on February 27, 1991. Other officers positively identified Davis as one of the men arrested one to two minutes after Officer Farmer's "lookout." And Officer Vines testified to Farmer's identification of Davis at the scene. *See United States v. Dyke*, 901 F.2d 285, 287 (2d Cir.1990). Because the clothing description in the buy report simply mirrors the direct identification of Davis, any erroneous admission of such cumulative evidence is therefore harmless. *See United States v. Lampkin*, 159 F.3d 607, 614–15 (D.C.Cir.1998); *Clarke*, 24 F.3d at 267.

The third issue Davis raises relates to the district court's determination to admit evidence of Davis's bad acts. *See* Fed. R. Evid. 403. It is clear that the district court took its responsibility under Rule 403 seriously. The district court explicitly "weigh[ed]" and analyzed the probative value of admitting evidence of Davis's prior bad acts. And the district court took

account of and sought to limit any potential prejudice to Davis by, among other things, excluding mention of the prior bad acts until the end of the government's case in chief and barring reference to them in the government's opening and closing statements.

Whether the district court included in the Rule 403 balancing Davis's proposed stipulation is not clear. On the one hand, the district court stated that it would follow *United States v. Hudson*, 884 F.2d 1016 (7th Cir.1989), which adopted a per se rule making a defendant's proposed stipulation irrelevant to the 403 balancing test in specific intent cases. On the other hand, the district court assessed the probative value of admitting the evidence and "weigh[ed]" it, presumably against any potential prejudicial effect (what else would be on the other side of the scale?); the district court mentioned the proposed stipulation during this on-the-record Rule 403 balancing; and the district court stated that the proposed stipulation "should not control" the balancing, implying that, in contrast to *Hudson*, the court found the stipulation relevant to the 403 determination. Thus the district court may have considered on the record the stipulation during its Rule 403 balancing, but as we have said, this is not certain.

■ At all events, if the district court failed to weigh the proposed stipulation in the balance, a remand would nevertheless be unwarranted. The factors germane to the Rule 403 determination are readily apparent and an on-the-record consideration of the proposed stipulation would not have changed the district court's ruling. *See United States v. Graham*, 83 F.3d 1466, 1473–74 (D.C.Cir.1996); *United States v. Manner*, 887 F.2d 317, 322–23 (D.C.Cir.1989).

■ In *Old Chief v. United States*, the Supreme Court reiterated that as a general rule, district courts may—indeed should—permit the government to introduce relevant evidence of bad acts to prove

elements of guilt (excluding felony status) and to establish all the circumstances surrounding the offense. *See* 519 U.S. 172, 186–89, 191–92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Here, the government sought to use the evidence to prove intent and knowledge elements. On the other hand, we determined in *Crowder II* that Davis's proposed stipulation was "of uncertain and doubtful significance." 141 F.3d at 1208. "It mentioned only some hypothetical drug dealer, some 'person.' Yet the prosecution's evidence of Davis's prior crack cocaine sales—sales close in time and place to those charged in the indictment—was not meant to show that *someone* had intent and knowledge. The evidence was introduced to prove that Davis had the intent to distribute the crack and that Davis knew what he was possessing. Davis's proposed stipulation could not possibly have substituted for such proof. It did not even mention him by name." *Id.* At the end of the *Crowder II* opinion, in the discussion of Rule 403, we added the following: "Here the proposed stipulations were ambiguous, conditional and tentative. Neither mentioned the defendant directly. At no point in their trials did either defendant propose a jury instruction requiring the jury to find the conceded element of intent.... The judges who presided at their trials could not possibly have anticipated the model jury instruction that later developed ... and their failure to do so was neither 'plain' nor 'error.'" *Id.* at 1210. This last point is particularly telling. Davis's proposed stipulation needed to be backed up by a jury instruction. Without one, with just the naked and ambiguous stipulation Davis tendered, the district court's assessment under Rule 403 could not possibly have been affected. We reverse a district court's decision to admit evidence under Rule 403 only for a grave abuse of discretion. *See United States v. Neville,* 82 F.3d 1101, 1107 (D.C.Cir.1996). Nothing of the sort occurred here.

The petition for rehearing is denied.

*So ordered.*