963 So.2d 449 (2007)
STATE of Louisiana
v.
Deborah McGEE.
No. 07-KA-130.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2007.
*450 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler-Appellate Counsel, Thomas Block-Trial Counsel, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Appellee, State of Louisiana.
Gwendolyn K. Brown, Attorney at Law, Louisiana Appellate Project, Baton Rouge, Louisiana, for Appellant, Deborah McGee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
On October 12, 2005, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Deborah McGee, with looting, a violation of La. R.S. 14:62.5(C).[1] The defendant pled not guilty at arraignment.
On August 16, 2006, after waiving her right to a jury trial, the defendant proceeded to trial before the judge, who found her guilty as charged. On September 22, 2006, the trial judge sentenced the defendant to three years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. This timely appeal follows.
Facts
On August 26, 2005, Governor Kathleen Blanco issued an executive order proclaiming a State of Emergency in Louisiana in anticipation of the impact of Hurricane Katrina. On August 27, 2005, Jefferson Parish President Aaron Broussard declared a State of Emergency in Jefferson Parish in anticipation of the impact of Hurricane Katrina on this area. Following Hurricane Katrina's landfall on August 29, 2005, law enforcement officers were on patrol in Jefferson Parish.
At approximately 5:00 p.m. that day, officers from the Kenner Police Department responded to a call of looting at Brother's Food Mart at 1227 Veterans Boulevard in Kenner. Officer Ronald Bertucci testified that, as he and the other officers arrived at the scene, he noticed the defendant and another person exiting the store through an opening in the front store window, which had been shattered after the plywood had been removed.[2] Officer *451 Bertucci testified that the defendant had two green bottles in one hand and a black plastic bag in the other hand.
Officer Bertucci exited the police vehicle and approached the defendant, who dropped the bag that she was carrying and walked away. When he yelled at her to return, she kept walking and said, "I didn't do nothing." The defendant tried to run, which was difficult because of high water in the street. Sergeant Nicholas Huth pursued the defendant on foot and Officer Kenneth Marroccoli pursued them in the police vehicle. Officer Bertucci detained the other person who had exited the store, who was later identified as Michael Smith.
Ultimately, Sergeant Huth apprehended the defendant, who was verbally abusive to him. Sergeant Huth returned the defendant to the scene, where Officer Bertucci positively identified her. Meanwhile, Officer Bertucci observed a third person, later identified as Tyrone Lambert, exiting the store with a bag of items and called for backup.
After apprehending the defendant, the officers determined that the defendant had been carrying two bottles of Heineken beer and at least nine other bottles of alcoholic beverages in the black plastic bag that she dropped when she was confronted. There was no food among the items in the bag the defendant was carrying.
Officer Bertucci testified that the defendant said she was not from Kenner. When one of the officers asked her what she was doing there, she claimed that she just came to see if the store was open. She also claimed that she was holding the bag for "Michael." At trial, Officer Bertucci positively identified the defendant as the woman he saw carrying two bottles of beer and a black plastic bag full of alcoholic beverages out of Brother's Food Store on August 29, 2005. Sergeant Huth positively identified the defendant as the woman whom he apprehended after observing her in front of Brother's Food Store.
Ahmed Saeed testified that he worked at Brother's Food Store. Before the hurricane, he boarded it up and evacuated. On the Friday after the storm, he returned to the store and discovered that the store had been looted. Although the store also contained groceries, nothing other than alcohol and tobacco was taken.
At trial, the defendant testified that, prior to Hurricane Katrina, she resided at the home she owned in New Orleans. The defendant testified that, before the storm, she was a licensed security officer at the Family Dollar store on Carrollton Avenue. She admitted that she had pled guilty to first-offense driving while intoxicated in 2004.
The defendant testified that, on the afternoon of August 29, 2005, she was standing on a corner on 27th Street in Kenner, about a block away from her sister's house where she had stayed during the storm, trying to get some fresh air. While she was standing on the corner, she saw a female running and being chased by a police officer on foot. The defendant testified that the officer then approached the defendant, pulled his gun, and ordered the defendant to the ground. The officer asked the defendant if she had seen a woman running, and the defendant answered negatively. Thereafter, the defendant was arrested and taken to jail. According to the defendant, the officer told her she was arrested for a curfew violation. The defendant denied that she entered *452 or took any alcohol from Brother's Food Store. The defendant claimed that she could not have fled from the officers because her asthma prevents her from strenuous activities, like running.
During the State's rebuttal, Sergeant Huth testified that he did not lose sight of the defendant from the time he saw her in front of the store until he apprehended her on Tifton Street. He specifically denied that he had been chasing anyone but the defendant or that he told her that she was going to jail for a curfew violation.
After hearing the testimony and reviewing the evidence, the trial judge found the defendant guilty as charged. This appeal follows.
In her sole assignment of error, the defendant argues that the trial court erred by sustaining the State's objection to the defense's efforts to impeach the testimony of one of the State's witnesses. The defendant contends that her right to confrontation was abridged when the trial judge refused to allow her to impeach Officer Bertucci with his prior inconsistent statement. The State responds that the trial judge's ruling was not an abuse of discretion.
The record reflects that, during the State's rebuttal, Officer Bertucci testified that the defendant was exiting the store when he first saw her. When defense counsel asked Officer Bertucci, on cross-examination, if he had seen three people exiting the building, Officer Bertucci reiterated that he had seen two people exit the store as the officers arrived at the location and one man exit the store a few minutes later. Defense counsel then showed Officer Bertucci the police report of the incident, which Officer Bertucci denied writing. Although Officer Bertucci acknowledged that he supplied the information regarding the incident to the author of the report, Officer Bertucci testified that he did not write the report and that he could not discern from the handwriting and signature who authored the report.
When defense counsel asked if the report indicated how many people fled the business, Officer Bertucci testified that the report indicated three people had fled the business, which was accurate. Officer Bertucci repeated that he had seen two people leaving the building when he first drove up then later saw a third man exiting the building while his partners were apprehending the defendant. He acknowledged that the report stated that three people were "fleeing the business," which was an accurate representation of the entire event. When the defendant asked the officer to read the particular sentence from the report into the record regarding the individuals'"fleeing" the business, the State objected on the basis of hearsay, since the report was not prepared by the officer. The court sustained the objection.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16; State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135. The main purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Id. Cross-examination is the primary means of testing the truthfulness of testimony. Id.
The credibility of a witness may be attacked by any party. La. C.E. art. 607(A). A witness' prior inconsistent statement may be used to impeach his credibility. See, State v. Johnson, 01-0842 (La.App. 5 Cir. 2/13/02), 812 So.2d 106, *453 115, writ denied, 02-1037 (La.3/21/03), 840 So.2d 532.
La. C.E. art. 607 provides, in pertinent part:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
If the witness has had a fair opportunity "to admit the fact and has failed distinctly to do so," extrinsic evidence of a prior inconsistent statement is admissible, not to prove the truth of the matter asserted, that is, not for its hearsay content, but to establish the fact of contradiction as a means of impeaching a witness' general credibility. State v. Owunta, 99-1569 (La.5/26/00), 761 So.2d 528, 529 (per curiam). However, if the witness admits the statement, he has impeached himself by his own testimony and thus, the prior inconsistent statement is inadmissible. State v. Johnson, supra.
On appeal, the defendant does not specify how the trial court's ruling served to deprive her of her right to confront Officer Bertucci. First, we note that defense counsel questioned Officer Bertucci at length about the number of people that he saw exiting the building during the entire incident, which, he stated, was three. Officer Bertucci also verified that the police report indicated that three people exited the store during this incident. Thus, defense counsel was unable to elicit contradictory testimony from Officer Bertucci.
Further, it is unclear from her arguments at trial or on appeal what additional information she wanted to elicit from Officer Bertucci to impeach him. Importantly, the defendant did not move to introduce the police report into evidence at trial or proffer the document to preserve the record for appeal.
In State v. Albert, 414 So.2d 680, 683-684 (La.1982), the defendant argued on appeal that the trial judge erred in preventing him from impeaching a witness. In that case, the witness admitted his prior statements, which were inconsistent with his trial testimony. The Albert court noted that the defendant had "obtained everything from the witness to which [he] was entitled by law in the way of impeachment  distinct admissions to prior inconsistent statements."
In the instant case, the defendant achieved all she could accomplish by having Officer Bertucci admit that the report reflected that three people were "fleeing from the business," whereas he testified that he saw two people walking out of the business as they drove up and one man leaving the store a few minutes later. In this case, the trial judge's ruling that sustained the State's objection did not deprive the defendant of her right of confrontation. This assignment of error is without merit.
Finally, as is our practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. We note that there is a conflict between the minute entry of the trial and the transcript of the trial. Here, the transcript reflects the defendant waived her right to a jury trial, whereas the minute entry does not. When there is a conflict between the transcript *454 and the minutes, the transcript controls. State v. Lynch, 441 So.2d 732 (La.1983). As such, we remand the matter to have the district court correct the minutes to reflect that the defendant waived her right to a jury trial.
CONVICTION AND SENTENCE AFFIRMED; REMANDED.
NOTES
[1] Co-defendants, Tyrone Lambert and Michael Smith, were charged in the same bill of information. Neither of the co-defendants, however, were tried with the defendant nor are they parties to this appeal.
[2] The testimony of Sergeant Huth and Officer Marroccoli was substantially the same as Officer Bertucci's testimony except neither Huth nor Marroccoli saw the defendant exit the store.