# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00932-COA

FRED PARTEE A/K/A FREDERICK PARTEE                    APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

DATE OF JUDGMENT:                04/03/2017
TRIAL JUDGE:                     HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:       TUNICA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED: 08/21/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT**:

¶1.    In March 2017, a Tunica County jury found Fred Partee guilty of burglary of a dwelling. With four prior-felony convictions and prior sentences to separate terms of one year or more, the Tunica County Circuit Court sentenced Partee as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to twenty-five years without eligibility for parole or probation. Partee filed an unsuccessful motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. Partee now appeals and asserts the admission of hearsay evidence bolstered the State's case against him and rendered his trial unfair. Finding no error, we affirm Partee's conviction and sentence.

**FACTS**

¶2.    Over the defense's objection, the circuit court first allowed Investigator Columbus Jones to testify at trial about a burglary relayed to him by a fifteen-year-old witness, Jasmine Carey, who identified Partee as the person who burglarized Maggie Clay's house. Partee's attorney objected on the basis of hearsay and asked the court to limit the testimony to identification only. The court found the anticipated testimony fell within an exception to the hearsay rule and overruled the objection. The court allowed Investigator Jones to testify about what Carey saw and the manner in which Carey observed Partee. Investigator Jones testified as follows:

> Q. [(By Mr. Gresham:)] And during that interview with Jasmine Carey -- excuse me -- I think I said Clay -- Carey, what did she advise you that she observed on that date, October 5th, 2016?
>
> A. She stated that she had observed -- she'd seen Mr. Partee, Fred, as she called him --
>
> Q. What's his last name?
>
> A. Partee -- going inside of Ms. Clay's residence through the window.
>
> Q. So did she say she knew him?
>
> A. Yeah, she said she knew him.
>
> Q. And was she consistent with her identification of Mr. Partee?
>
> A. Yes, she was.
>
> Q. And did she say how close she was to him or what she observed him doing or what he did or anything?
>
> A. Yeah. She stated that she was standing in the street right in front of the residence, and she could observe him get up on the vehicle that was parked in

the -- in that hole right there by the window, remove the air conditioner and go inside the residence.  She stated that she didn't see him come out but --

Q.  Go ahead.

THE COURT:  Let's try to limit it down back to just her identification of him.

Q.  (By Mr. Gresham:) And did she ever identify Mr. Partee as leaving the area?

A.  Yes, she did.

Q.  And when she identified him leaving the area, what --

MR. JOHNSON: Your Honor, object to this line of questioning as to hearsay.

THE COURT:  Well, I'll allow it but only in terms of her ability to identify him.

Q.  (By Mr. Gresham:)  Did she state how close she was to him when he left?

A.  Yes.  She stated she was standing right there, and he walked right across in front of her.

Q.  And she was positive on her identification to you?

A.  Yes, she was.

¶3.    The State thereafter called Carey to the witness stand, and she identified Partee in court.  Carey described what she recalled Partee wearing on the evening of the burglary.  In more detail, Carey testified to the following:  she had known Partee all her life; and on October 5, 2016, she was across the street from Partee when she saw him walk by with a red two-wheeled cart, go toward Clay's house, stand up on Clay's green truck, lift the window of Clay's house, pull out an air conditioner, put the air conditioner on the two-wheeled cart, and go into Clay's house through the window.  When Partee went inside the house, Carey

3

testified that she stepped up closer to look. She did not see Partee come out of the house. She testified that she later saw Partee come out of Clay's yard with the air conditioner on the cart and walk past her. Carey testified that Partee was in the house at least ten to fifteen minutes. She additionally stated that she saw another individual, whose nickname she said was "Young," enter Clay's house through the open window along with Partee.

## STANDARD OF REVIEW

¶4. We review a trial court's decision to admit or exclude testimony for abuse of discretion. *McGriggs v. State*, 987 So. 2d 455, 457 (¶3) (Miss. Ct. App. 2008).

## ANALYSIS

¶5. Partee argues that the circuit court erred in allowing Investigator Jones to testify at trial about the statements Carey made to him during the burglary investigation. Partee asserts that Investigator Jones's testimony about Carey's statements constituted inadmissible hearsay that improperly bolstered Carey's testimony.

¶6. Hearsay is defined by Mississippi Rule of Evidence 801(c) as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in[to] evidence to prove the truth of the matter asserted in the statement." However, Mississippi Rule of Evidence 801(d)(1)(C) provides "[a] statement . . . is **not hearsay** [if: . . . [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . identifies a person as someone the declarant perceived earlier." (Emphasis added).

¶7. Here, Carey testified at trial and was available for and subjected to cross-examination.

Likewise, Investigator Jones was available for and subjected to cross-examination. Further, each of Carey's statements, as testified to by Investigator Jones, are, for the most part, statements of identification of Partee in the manner Carey perceived him at the time. Carey identified Partee as: the person she saw cut down the side to the back of Clay's house; the person she saw get up on a vehicle; the person she saw remove an air conditioner from Clay's window; the person she saw go inside Clay's house through the window; and the person she saw leave the area minutes later.

¶8. Thus, the statements regarding Carey's identification of Partee were not hearsay. *See* M.R.E. 801(d)(1)(C). Instead, these were statements of identification made after perceiving Partee. We therefore find Investigator Jones's testimony regarding Carey's identification of Partee was non-hearsay and was admissible. To the extent the admission of any of Investigator Jones's testimony regarding Carey's statement was in error, the error was harmless. The jury heard, from Carey, in more detail about: Carey's relationship to Partee, the victim, and others; Partee's movements in, toward, and around the victim's house; and Partee's possession of the victim's air conditioner. Accordingly, this issue lacks merit.

## CONCLUSION

¶9. Because the investigator's hearsay-identification testimony fell within an exception to the rule against hearsay and Partee's right to a fair trial was not prejudiced, we find no error in the circuit court's admission of the testimony. We therefore affirm Partee's conviction and sentence.

¶10. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**